ELEANOR B. O'NEIL, FRASER KNIGHT O'NEIL, AND THE CITIZENS BANK AND TRUST COMPANY OF SOUTHERN PINES, EXECUTOR AND TRUSTEE UNDER THE WILL OF JOHN C. BARRON, DECEASED, v. MICHELLE O'NEIL, MOLLY O'NEIL AND MICHAEL O'NEIL, MINORS; AND THE UNBORN ISSUE OF ELEANOR B. O'NEIL.

(Filed 24 July, 1967.)

**1. Executors and Administrators § 31—**

The dispositive provisions of a will may not be modified by a family settlement merely because the beneficiaries may be dissatisfied with its provisions, and the courts will not substitute their judgment in contravention of the wishes of testator, but a will may be modified by a family settlement only when there exists some exigency or emergency not contemplated by testator and modification of the will in accordance with the family settlement would tend to preserve the estate and promote and encourage family accord.

**2. Same—**

The mere fact that a beneficiary under a will has filed a caveat does not warrant the court in approving a family agreement modifying the dispositive provisions of the will unless there is evidence before the court disclosing a *bona fide* controversy as to the validity of the will.

**3. Same—**

Mere allegation that caveat had been filed attacking the validity of the will on the ground of mental incapacity of grantor and allegation that the primary beneficiary had testified in a different case in regard to the mental

incapacity of testator generally, without evidence before the court disclosing that there would be evidence adduced at the caveat proceeding raising a serious question as to the validity of the will, is insufficient to invoke the equity jurisdiction of the court, and judgment approving the settlement is vacated and the cause remanded for a determination of whether there exists a *bona fide* controversy as to the will's validity.

APPEAL by P. H. Wilson, guardian *ad litem* for Michelle O'Neil, Molly O'Neil and Michael O'Neil, minors, and guardian *ad litem* for the unborn issue of Eleanor B. O'Neil, defendants, from a judgment rendered by His Honor, *John D. McConnell, Resident Judge* of the Twentieth Judicial District, in chambers, on March 8, 1967. From MOORE.

Plaintiffs instituted this civil action to obtain court approval of a "family settlement agreement" dated January 24, 1967, which modifies dispositive provisions of a paper writing dated October 7, 1964, probated in common form as the last will and testament of John C. Barron, deceased, and to obtain instructions that the trustee named in said will administer and dispose of the assets of the estate of John C. Barron in accordance with the provisions of said will *as modified* by said "family settlement agreement."

The case was submitted on the pleadings and on stipulations. The following exhibits were attached to and made a part of the complaint: (1) Exhibit A, the said will of October 7, 1964; (2) Exhibit B, first annual accounting of the executor; (3) Exhibit C, second annual accounting of the executor; (4) Exhibit D, statement of assets as of December 31, 1966; (5) Exhibit E, paper writing dated January 13, 1956, purporting to be a last will and testament of John C. Barron; and (6) Exhibit F, the "family settlement agreement" dated January 24, 1967, entered into and executed by the plaintiffs herein. The answer of the guardian *ad litem* admits categorically all allegations of the complaint.

John C. Barron, a widower, died February 23, 1965, at the age of eighty-six years. He was survived by plaintiff Eleanor B. O'Neil, his daughter and only child. Eleanor B. O'Neil, a widow, is fifty-two years of age. She has four children: (1) Fraser Knight O'Neil, a plaintiff herein, over twenty-one years of age; (2) Michelle O'Neil, eleven; (3) Michael O'Neil, ten; and (4) Molly O'Neil, eight.

The fair market value of the assets of the estate as of December 31, 1966, "after conditional payments of $200,992.31 in federal estate and North Carolina inheritance taxes during the year 1966," was $700,501.31, consisting of cash and securities valued as $668,001.31 and of real estate valued at $32,500.00. Anticipated income for 1967 is $26,733.24. These facts sufficiently disclose the nature and size of the estate.

On February 26, 1965, plaintiff Bank, which is named as executor and trustee therein, filed the paper writing dated October 7, 1964, for probate in common form as the last will and testament of John C. Barron; and on said date the Bank qualified as executor and is now acting in that capacity. The Bank stands ready to qualify and to act as trustee. The paper writing dated October 7, 1964, will be referred to hereafter as the "Will."

The "Will" provides that the entire estate, after payment of debts and funeral expenses, shall go to the Bank, as trustee, to be administered and disposed of as follows: The entire income is to be paid to Eleanor B. O'Neil during her lifetime, and at her death "the principal and accumulated income then constituting the trust estate shall be apportioned in equal shares to such of the children of my said daughter as shall then be living and to the living issue *per stirpes* of such of the children of my said daughter as shall be dead with issue then living." If any share "shall vest in any person under twenty-one years of age at the time of the vesting thereof in accordance with the foregoing provisions," such share is to be held and administered "as a separate trust" by the trustee until the beneficiary of such share attains the age of twenty-one years.

On June 22, 1965, Eleanor B. O'Neil filed a caveat to said "Will," alleging the execution thereof was obtained by fraud and undue influence and that John C. Barron, at the time of the execution thereof, lacked testamentary capacity. Fraser Knight O'Neil, upon becoming twenty-one years of age, "aligned himself with the caveator."

Pending trial of the issues raised by said caveat, the said "family settlement agreement" was entered into and executed by the Bank, Eleanor B. O'Neil and Fraser Knight O'Neil, the plaintiffs herein. It provides for modifications of said dispositive provisions of the "Will" as set forth below. In consideration thereof, the said caveators agree in substance they will interpose no objection to the probate of the "Will" in solemn form.

The said "family settlement agreement" proposes that the "Will" be modified in the following manner: As originally provided, the entire income is to be paid to Eleanor B. O'Neil during her lifetime. Upon her death, the share of each surviving child is to be held and administered by the trustee as follows: Such child is to receive the income therefrom until termination of the trust; one-third of the principal thereof upon attaining the age of twenty-five years; one-third of the "then remaining principal" upon attaining the age of thirty years; and "the entire remainder of the principal" upon attaining the age of thirty-five years. Upon the death of such child prior to termination of the trust, the trust assets are to be distributed

as such child "shall appoint by a will referring specifically to the power herein given to him or her," or, in the event of failure to exercise such power, to such child's next of kin.

It would seem that the proposed modifications do not affect the status of a grandchild whose parent predeceased Eleanor B. O'Neil. As originally provided, the share of such grandchild vests upon the death of Eleanor B. O'Neil; but if then under twenty-one years of age, the share of such grandchild is held in trust until he or she attains the age of twenty-one years.

If, after trial of the issue *devisavit vel non,* it should be adjudged that the "Will" is not the last will and testament of John C. Barron, the interests of the children of Eleanor B. O'Neil would be drastically and adversely affected in the following respects:

1.  If John C. Barron died intestate, Eleanor B. O'Neil, as sole heir and next of kin, would receive in fee the entire estate.

2.  If a paper writing dated January 13, 1956, purporting to be the last will and testament of John C. Barron, were probated (which the parties stipulate would take place if the "Will" is not established), Eleanor B. O'Neil, under the terms thereof, would receive in fee the entire estate.

3.  Assuming Eleanor B. O'Neil received the entire estate of John C. Barron: Upon the death, intestate, of Eleanor B. O'Neil, or upon her death leaving a will in which her children are named as beneficiaries, the share each child would receive would be reduced by the prior claims of federal estate and North Carolina inheritance taxes.

4.  Assuming Eleanor B. O'Neil received the entire estate of John C. Barron: If Eleanor B. O'Neil should remarry, her husband, if not a beneficiary under her will, could dissent therefrom as authorized by G.S. 30-1 and receive a portion of her estate.

Paragraphs 27 and 28 of the complaint are as follows:

"27.   Eleanor B. O'Neil is strongly of the opinion that her children should not be given the unrestricted use and enjoyment of substantial sums of money at the age of twenty-one years; in the event of her death, she is fearful that her children would not be capable of managing and preserving their shares of the estate of John C. Barron at such an early age; her convictions concerning this are such that, unless the term of the trusts for her children is extended as set out in the settlement agreement hereinafter referred to, she intends to actively pursue and prosecute the caveat proceeding, despite the fact that the ultimate success of the caveat might, and

probably would, drastically diminish the amount of money and property ultimately passing to her children from the estate of John C. Barron.

"28. Because there is a *bona fide* controversy regarding the validity of the paper writing dated October 7, 1964, and because the grandchildren of John C. Barron are among the principal objects of his bounty and the parties desire to carry out the wishes of John C. Barron to preserve as much of his estate as possible for their ultimate benefit and enjoyment, and because the parties desire to avoid the expense and delay in the settlement of the estate of John C. Barron which would be occasioned by a trial of the caveat proceeding, and because the parties are convinced that postponing the beneficial enjoyment of the shares given to the children of Eleanor B. O'Neil after her death until each child is more mature and is capable of exercising sounder judgment and discretion in the management and preservation of substantial sums of money is in the best interests of each child, the parties have entered into a settlement agreement, expressly subject to approval by the Supreme Court of North Carolina, settling all matters and things in controversy among them, a copy of which settlement agreement is attached hereto and marked Exhibit F."

The court made findings of fact in accordance with the admitted allegations and stipulations. In addition thereto, the court found as a fact that "(t)here is a *bona fide* controversy regarding the validity of the paper writing dated October 7, 1964, purporting to be the last will and testament of John C. Barron, and a trial of the caveat proceeding would result in substantial expense to the estate and delay in the settlement of the estate." Upon the facts found, the court entered judgment authorizing and instructing the Bank to administer and dispose of all the assets of the estate of John C. Barron as executor and trustee pursuant to the terms of said "Will" as modified by the terms and provisions of said "family settlement agreement."

The guardian *ad litem*, as set forth in his appeal entries, excepted "to the signing of the foregoing judgment on the grounds that the facts as correctly found and set forth in the judgment do not support or justify the conclusions of law set forth in the judgment," and appealed.

*Boyette & Brogden and Hoyle & Hoyle for plaintiff appellees Eleanor B. O'Neil and Fraser Knight O'Neil.*

*Leath, Bynum, Blount & Hinson for plaintiff appellee The Citizens Bank and Trust Company of Southern Pines.*

*William D. Sabiston, Jr., for defendant appellant P. H. Wilson, Guardian Ad Litem.*

BOBBITT, J.   There are material limitations upon the right to alter the terms of a testamentary trust by a family settlement agreement. *Carter v. Kempton,* 233 N.C. 1, 62 S.E. 2d 713; *Redwine v. Clodfelter,* 226 N.C. 366, 38 S.E. 2d 203; *Trust Co. v. Buchan,* 256 N.C. 142, 123 S.E. 2d 489; *Stellings v. Autry,* 257 N.C. 303, 126 S.E. 2d 140.

Simply stated, plaintiffs propose a substantial modification of the dispositive provisions of the "Will."

A will is not an instrument "to be amended or revoked at the instance of devisees who are merely dissatisfied with its provisions." Denny, J. (later C.J.), in *Wagner v. Honbaier,* 248 N.C. 363, 369, 103 S.E. 2d 474, 478. "It is not the province of the courts to substitute their judgment or the wishes of the beneficiaries for the judgment and wishes of the testator." Barnhill, J. (later C.J.), in *Carter v. Kempton, supra.*

"Family agreements looking to the advantageous settlement of estates or to the adjustment of family differences, disputes or controversies, when approved by the court, are valid and binding. They are bottomed on a sound public policy which seeks to preserve estates and to promote and encourage family accord." *Fish v. Hanson,* 223 N.C. 143, 25 S.E. 2d 461, and cases cited. When fairly made they are favorites of the law. *Tise v. Hicks,* 191 N.C. 609, 132 S.E. 560. However, "(t)he rule that the law looks with favor upon family agreements does not prevail if the rights of infants are unfavorably affected." *Wagner v. Honbaier, supra; In re Reynolds,* 206 N.C. 276, 173 S.E. 789.

The provisions of a will or testamentary trust may be modified by a family settlement agreement only where there exists some exigency or emergency not contemplated by the testator. *Rice v. Trust Co.,* 232 N.C. 222, 59 S.E. 2d 803; *Redwine v. Clodfelter, supra.* Here, the alleged unforeseen exigency or emergency is the filing of the caveat with resulting expensive litigation and drastic and adverse effects upon defendants in the event the "Will" should not be established. Nothing in the record suggests controversies presently exist between Eleanor B. O'Neil and defendants or any present lack of family accord.

The question for decision is whether the record before us is sufficient to support the court's finding that "(t)here is a *bona fide* controversy regarding the validity of the paper writing dated October 7, 1964, purporting to be the last will and testament of John

C. Barron." If not, the judgment must be vacated and the cause remanded.

The mere fact that a caveat has been filed, standing alone, is not sufficient ground for modification of the dispositive provisions of the will. The outcome of the litigation must be in doubt to such extent that it is advisable for persons affected to accept the proposed modifications rather than run the risk of the more serious consequences that would result from an adverse verdict.

Nothing in the record indicates evidence was offered when the case was submitted to Judge McConnell. The judgment seems to be based solely upon admissions and stipulations. Hence, its binding effect, if any, upon defendants, is predicated upon the agreements and consent of their guardian *ad litem.*

"It is well settled in this jurisdiction, at least, that in the case of infant parties, the next friend, guardian *ad litem,* or guardian cannot consent to a judgment against the infant, without an investigation and approval by the court." *Butler v. Winston,* 223 N.C. 421, 27 S.E. 2d 124. As stated by Parker, J. (now C.J.), in *Trust Co. v. Buchan, supra:* "The superior court of North Carolina in its equity jurisdiction has inherent authority over the property of infants, since it stands *in loco parentis,* and has the same jurisdiction in this respect as that of the English High Courts of Chancery. *Coxe v. Charles Stores Co.,* 215 N.C. 380, 1 S.E. 2d 848."

Plaintiffs alleged Eleanor B. O'Neil was examined adversely before a commissioner, on motion of the Bank, in the caveat proceeding. They alleged she testified, when so examined, "that her father, John C. Barron, was confused in the last year of his life about many things; that at times he did not recognize old friends; that he was uncertain as to the nature and extent of his property; that he frequently, prior thereto, stated that he felt that substantial sums of money should not be inherited by children at the age of twenty-one, and that children should not receive the unrestricted use of substantial sums of money until they were more mature, and preferably in three separate distributions at ages twenty-five, thirty, and thirty-five." Plaintiffs alleged "that Eleanor B. O'Neil contends that her sworn testimony tends to show generally that during most of the last year of his life John C. Barron lacked the capacity to understand the nature of his act and the nature and extent of his property."

Plaintiffs alleged that "the position of the Bank is, and continues to be, that the paper writing dated October 7, 1964, was drafted by an experienced and competent attorney; that it was executed by John C. Barron at a time when he was completely lucid and at a time when he had a clear understanding of the nature of

his act and the nature and value of his property and the manner in which he desired to dispose of his property; that it was properly executed by John C. Barron; and that it is in all respects a valid testamentary disposition of all the property and estate of John C. Barron."

It does not appear that a transcript of said adverse examination of Eleanor B. O'Neil was submitted to Judge McConnell. Certainly, it is not in the record presented to this Court. Moreover, neither the Bank nor the guardian *ad litem* offered evidence as to whether the "Will" constitutes a valid testamentary disposition by John C. Barron of his property and estate.

The provisions of the "Will" indicate clearly it was drawn carefully by a competent and skillful draftsman. The signature of John C. Barron appears on the last (sixth) page and on the left-hand margin of each of the five preceding pages. Three witnesses attested its execution by John C. Barron. The record discloses no information as to the circumstances under which the "Will" was drafted. Nor does the record indicate what inquiries, if any, have been made to determine what testimony the draftsman and the witnesses would give relevant to what occurred prior to and at the time of the execution of the "Will."

In the present case there is no evidence, either by testimony or affidavit, that John C. Barron did not have mental capacity sufficient to make and execute a valid will on October 7, 1964. The nearest approach to evidence to this effect is the allegation in the complaint that Eleanor B. O'Neil *had* testified in *a different* case in the general manner set forth above. In this connection, compare *Redwine v. Clodfelter, supra,* and *Wagner v. Honbaier, supra.*

Plaintiffs alleged they entered into the agreement "expressly subject to approval by the Supreme Court of North Carolina." We are constrained to hold the record submitted does not contain evidence sufficient to support the crucial factual findings upon which the validity of the "family settlement agreement" depends.

We do not hold there is no *bona fide* controversy as to the validity of the "Will." We do hold, and all that we hold, is that there is no evidence in the present record sufficient to support the court's finding that such *bona fide* controversy exists. Accordingly, the judgment of the court below is vacated and the cause is remanded for further proceedings not inconsistent with this opinion.

If there exists in fact a genuine and *bona fide* controversy as to the validity of the "Will," the proposed modifications of its dispositive provisions seem reasonable and not adverse to the best interests of the defendants.

Error and remanded.